```
               IN THE UNITED STATES DISTRICT COURT
              FOR THE SOUTHERN DISTRICT OF ALABAMA
                         SOUTHERN DIVISION
```

CLAUDIA A. ALLEN,                    *
                                     *
    Plaintiff,                       *
                                     *
vs.                                  *    CIVIL ACTION 09-00496-B
                                     *
MICHAEL J. ASTRUE,                   *
Commissioner of                      *
Social Security,                     *
                                     *
    Defendant.                       *

## ORDER

Plaintiff Claudia A. Allen ("Plaintiff") brings this action seeking judicial review of a final decision of the Commissioner of Social Security denying her claim for period of disability, disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401 et seq., and 1381 et seq. On April 7, 2010, the parties consented to have the undersigned conduct any and all proceedings in this case, and waived oral argument. (Docs. 18, 19). Upon careful consideration of the administrative record and memoranda of the parties, the decision of the Commissioner is **AFFIRMED.**

## I.   Procedural History

Plaintiff protectively filed applications for disability income benefits and supplemental security income benefits on May 8, 2006. Plaintiff alleges that she has been disabled since April 28, 2006, due to carpal tunnel syndrome and arthritis. (Tr. 110-117, 127). Plaintiff's applications were denied initially and she

timely filed a Request for Hearing. (Tr. 89-97, 100). On November 1, 2007, Administrative Law Judge Stuart A. Wein ("ALJ Wein") held an administrative hearing, which was attended by Plaintiff and her representative. (Tr. 44-66). ALJ Wein held a second administrative hearing on May 28, 2008, which was attended by Plaintiff, her representative, and a vocational expert (hereinafter "VE"). (Tr. 67-88). On July 25, 2008, ALJ Wein issued an unfavorable decision wherein he determined that Plaintiff is not disabled. (Tr. 11-22). Plaintiff's request for review was denied by the Appeals Council ("AC") on July 7, 2009. (Tr. 1-5). As a result, the ALJ's decision became the final decision of the Commissioner in accordance with 20 C.F.R. § 404.981. Id. The parties agree that this case is now ripe for judicial review and is properly before this Court pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3).

**II. Issues on Appeal**

A. Whether the ALJ erred in finding that Plaintiff can perform sedentary work.

B. Whether the ALJ erred in failing to perform a function by function analysis of Plaintiff's limitations in assessing her residual functional capacity (hereinafter "RFC").

**III. Background**

Plaintiff was born on June 16, 1961 and was 46 years old at the time of the May 28, 2008 administrative hearing. (Tr. 50, 67, 110, 115). Plaintiff testified that she last worked in April 2006 for the Red Cross, at the Mobile Works employment office.

According to Plaintiff, she left that position because the funding ran out. Plaintiff testified that in the Red Cross position, she spent half of her time at her desk, and half of her time on her feet, and that while working at the job, she had began to drop things, and to experience a lot of pain. (Tr. 51-52). Plaintiff also testified that prior to the Red Cross job, she had done mostly secretarial type work, which involved the use of a computer. (Tr. 51-52).

Plaintiff further testified that she suffers from carpal tunnel and arthritis, and that as a result, she drops things. She also testified that she experiences pain which she described as like needles sticking in her. Plaintiff testified that Tylenol Arthritis Pain and an arthritis cream helps with the pain, and that she also uses an arm brace[1]. (Tr. 55-57). Plaintiff also testified that she has experienced problems with her knees, ankles and the bottom of her feet since being hit by a car in 2000. (Tr. 62). Plaintiff further testified that she has problems with migraine headaches and vertigo. (Tr. 63-64, 74-75) According to Plaintiff, her daily activities consist of getting her daughters ready for school, watching television and cooking. Plaintiff also washes dishes and does the laundry with assistance from her daughters. (Tr. 59).

---

[1] According to Plaintiff, when the arm brace worn out, she began using her knee brace for her arm. (Tr. 57).

**IV. Analysis**

   **A. Standard of Review**

In reviewing claims brought under the Act, this Court's role is a limited one. The Court's review is limited to determining 1) whether the decision of the Secretary is supported by substantial evidence and 2) whether the correct legal standards were applied. Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).[2] A court may not decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. Sewell v. Bowen, 792 F.2d 1065, 1067 (11th Cir. 1986). The Commissioner's findings of fact must be affirmed if they are based upon substantial evidence. Brown v. Sullivan, 921 F.2d 1233, 1235 (11th Cir. 1991); Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983) (holding substantial evidence is defined as "more than a scintilla but less than a preponderance" and consists of "such relevant evidence as a reasonable person would accept as adequate to support a conclusion[]"). In determining whether substantial evidence exists, a court must view the record as a whole, taking into account evidence favorable, as well as unfavorable, to the Commissioner's decision. Chester v. Bowen, 792 F. 2d 129, 131 (11th

---

[2] This Court's review of the Commissioner's application of legal principles is plenary. Walker v. Bowen, 826 F.2d 996, 999 (11th Cir. 1987).

Cir. 1986); Short v. Apfel, 1999 U.S. Dist. Lexis 10163 (S.D. Ala. June 14, 1999).

   **B.  Discussion**

   An individual who applies for Social Security disability benefits must prove her disability. 20 C.F.R. §§ 404.1512, 416.912. Disability is defined as the "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 404.1505(a), 416.905(a). The Social Security regulations provide a five-step sequential evaluation process for determining if a claimant has proven her disability. 20 C.F.R. §§ 404.1520, 416.920.[3]

---

[3]The claimant must first prove that he or she has not engaged in substantial gainful activity. The second step requires the claimant to prove that he or she has a severe impairment or combination of impairments. If, at the third step, the claimant proves that the impairment or combination of impairments meets or equals a listed impairment, then the claimant is automatically found disabled regardless of age, education, or work experience. If the claimant cannot prevail at the third step, he or she must proceed to the fourth step where the claimant must prove an inability to perform their past relevant work. Jones v. Bowen, 810 F.2d 1001, 1005 (11th Cir. 1986). In evaluating whether the claimant has met this burden, the examiner must consider the following four factors: (1) objective medical facts and clinical findings; (2) diagnoses of examining physicians; (3) evidence of pain; (4) the claimant's age, education and work history. Id. at 1005. Once a claimant meets this burden, it becomes the Commissioner's burden to prove at the fifth step that the claimant is capable of engaging in another kind of substantial gainful employment which exists in

The ALJ determined that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2009, and that she has not engaged in substantial gainful activity since her alleged onset date. The ALJ concluded that while Plaintiff has the severe impairment of bilateral carpal tunnel syndrome, it does not meet or medically equal the criteria for any of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, Regulations No. 4. (Tr. 16-17). The ALJ found that Plaintiff has the residual functional capacity (hereinafter "RFC") for sedentary work; however, she is limited to occasional reaching and occasional, as opposed to repetitive, fine manipulation. (Tr. 17). The ALJ also concluded that because Plaintiff's past relevant work as a secretary required repetitive fine manipulation, Plaintiff is unable to perform her past relevant work. (Tr. 20). The ALJ concluded that considering Plaintiff's age, education, work experience and RFC, there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Id.

The relevant evidence of record reflects that Plaintiff began receiving treatment for pain in her left hand at Victory Health

---

significant numbers in the national economy, given the claimant's residual functional capacity, age, education, and work history. Sryock v. Heckler, 764 F.2d 834 (11th Cir. 1985). If the Commissioner can demonstrate that there are such jobs the claimant can perform, the claimant must prove inability to perform those jobs in order to be found disabled. Jones v. Apfel, 190 F.3d 1224, 1228 (11th Cir. 1999). See also Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987) (citing Francis v. Heckler, 749 F.2d 1562, 1564 (11th Cir. 1985)).

Center on December 20, 2005. (Tr. 160). At that time, Plaintiff reported left hand pain that shot up her arm and hand. She also reported dropping a glass because of weakness in her hand. She was referred to an orthopedist. (Tr. 160-162).

Plaintiff was treated by B. H. Freeman, M.D., at the Orthopedic Group, beginning in January 2007. On exam, Dr. Freeman noted mildly positive Tinel's[4] at the carpal tunnel, and that x-rays showed probably some fairly specific and early triscaphe arthritis. He ordered nerve conduction studies (hereinafter "NCS"). Dr. Freeman reported that the NCS revealed mild left carpal tunnel syndrome. (Tr. 169).

Plaintiff returned to Dr. Freeman on January 18, 2006. Dr. Freeman noted mild carpal tunnel on the left, and also carpometacarpal joint arthritis. He recommended injection in the carpal tunnel. On February 6, 2006, Dr. Freemen reported that injection in the carpal tunnel did not help at all, and opined that Plaintiff was suffering from triscaphy arthritis[5]. He prescribed a thumb spica cast[6], and prescription-strength Advil or Aleve.

---

[4]Tinel's sign is an test used to detect an irritated nerve. See, www.medicinenet.com. (Last visited February 22, 2010).

[5]Triscaphe arthritis, is a degenerative arthritis in which the degenerative change is limited to between the trapezium, trapezoid, and distal scaphoid. See, www.ncbi.nlm.nih.gov. Last visited March 23, 2010.

[6]Thumb spica wrist braces usually offer additional immobilization for the thumb area. These braces are indicated for soft tissue injuries, gamekeeper injuries, collateral ligament

7

(Tr. 169). During Plaintiff's March 20, 2006 visit, Dr. Freeman noted that Plaintiff was still having problems, and that he could not do anything for her except offer anti-inflammatories and continued splinting. (Tr. 169). Plaintiff was seen by Dr. Freeman again on September 18, 2006. Dr. Freeman noted that Plaintiff had a mildly positive carpal tunnel, crepitus in her radioulnar joint, and prominent distal ulna with some evidence of impingement on her x-ray. He further noted some crepitus in the radioulnar joint. (Tr. 182).

Medical consultant Petra Chnapekova-Simmons completed a Physical Residual Functional Capacity Assessment on behalf of the Agency on June 9, 2006. She opined that Plaintiff is limited to lifting/carrying up to 20 pounds occasionally and 10 pounds frequently, standing/walking/sitting about six hours in an eight-hour workday, and pushing and pulling hand or foot controls without limit. She further reported that Plaintiff has no postural, manipulative, visual, communicative or environmental limitations. (Tr. 170-177).

Plaintiff was treated at Stanton Road Clinic on August 3, 2006. She complained of pain in all joints, worse in her wrist and thumb. On physical exam, Plaintiff had positive Tinel's, and pain and crepitus in her knees. She also had reduced sensation in her

---

support and avulsion fractures of the thumb. See, www.kneeshop.com. Last visited March 23, 2010.

left forearm.  She was diagnosed with carpal tunnel vs ulnar nerve compression and osteoarthritis vs. rheumatoid arthritis, and was referred to an orthopedic for a possible release procedure.  (Tr. 179-180). Plaintiff was next seen at the Stanton Road Clinic on May 30, 2008.  She reported weight loss,, loss of appetite, dizziness, heart palpitations, arthralgias and stiffness.  She was diagnosed with weight loss, carpal tunnel, and multiple joint stiffness and pain.  Testing for rheumatoid factor was negative. (Tr. 201-202, 204).

Plaintiff was seen by Donald Newman, M.D., at Northside Clinic, on November 3, 2006.  She reported pain in her joints, particularly her wrists, knees and toes, and that her balance was off.  Her examination was described as "pretty unremarkable."  Dr. Newman prescribed Ultracet[7], Elavil[8], Meclizine, Ceftin[9] and tapering Prednisone.  (Tr. 184-185).

Andre J. Fontana, M.D., performed an orthopedic evaluation of Plaintiff at the request of the Agency on January 29, 2008.  On physical exam, Dr. Fontana notes positive Tinel's, dryness in her

---

[7]Ultracet contains the opioid analgesic tramadol and acetaminophen, and is used to treat moderate to severe pain. See, www.drugs.com.  (Last visited February 22, 2010).

[8]Elavil is a tricyclic antidepressants, used to treat symptoms of depression. See, www.drugs.com.  (Last visited February 22, 2010).

[9]Ceftin is a cephalosporin antibiotic, used to treat many kinds of bacterial infection.  See, www.drugs.com.  (Last visited February 22, 2010).

sweat patterns, good range of motion, no swelling in her fingers and wrists, and 5/5 grip strength in the upper extremity. (Tr. 197-198). Dr. Fontana reported that x-rays of Plaintiff's wrists AP/lateral showed minimal if any degenerative changes, and x-rays of her knees showed minimal if any degenerative changes. He noted possible mild spurring over the patella in the lateral view of her left and right knee. He diagnosed Plaintiff with left and right wrist carpal tunnel syndrome. Dr. Fontana opined that Plaintiff would have difficulty with constant, repetitive activities, and that she was restricted from kneeling, crawling, frequent squatting, climbing and walking at unprotected heights. (Tr. 198).

Dr. Fontana completed a Physical Capacities Evaluation on the same day. He opined that Plaintiff could sit/stand/walk two hours at a time, and eight hours total in an eight-hour workday, and could lift/carry up to 20 pounds continuously, 25 pounds frequently and 50 pounds occasionally. Dr. Fontana further opined that Plaintiff could do simple grasping with her left and right hands, but she could not engage in repetitive pushing or pulling, or repetitive fine manipulation. He also opined that Plaintiff can occasionally bend, squat, and reach, but cannot crawl or climb. He further opined that Plaintiff is moderately limited in her ability to work at unprotected heights and mildly limited in her ability to work around moving machinery or while driving automotive equipment. (Tr. 199).

10

Dr. Fontana provided an addendum to this evaluation, in which he noted that an x-ray of Plaintiff's right hand showed mild to moderate arthritis at the metacarpophalangeal joint of the thumb and moderate to severe arthritis at the interphalangeal joint. He noted no significant arthritic changes in her wrist or other fingers other than some mild degenerative changes in the distal interphalangeal joints. He noted similar changes on the right and left hand, as seen on a lateral view of the fingers and thumb area. He further reported that the x-ray of Plaintiff's left hand, lateral view, shows an accentuated degenerative change in the DIP joint of the little finger, the ring finger, the long finger and the index finger. He noted no significant degenerative changes in the interphalangeal joint of the thumb or the metacarpophalangeal of the thumb. Dr. Fontana noted that the AP view of the hand shows mild to moderate degenerative changes in the metacarpophalangeal joint of the thumb and interphalangeal joint of the thumb. (Tr. 200).

1.  **Whether the ALJ erred in finding that Plaintiff can perform sedentary work, even though Dr. Fontana found she could not perform bilateral repetitive fine manipulation.**

Plaintiff argues that her inability to perform repetitive fine manipulation significantly limits her ability to handle and work with small objects with both hands, which in turn significantly erodes the sedentary work base such that Plaintiff is unable to perform any work at the sedentary level. (Doc. 15).

Defendant counters that Dr. Fontana opined that Plaintiff would have difficulty with constant repetitive activities, and as a result, restricted her from performing *repetitive* fine manipulation. According to Defendant, that limitation does not preclude Plaintiff from being able to perform fine manipulation on an occasional basis. (Doc. 16 at 5).

In determining Plaintiff's residual functional capacity, the ALJ stated as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) involving only occasional reaching and occasional fine manipulation but no repetitive fine manipulation......................
>
> As for the opinion evidence, more weight to given to Dr. Fontana who reported only mild to moderate objective findings. His only impression was left and right wrist carpal tunnel syndrome. She could do occasional reaching consistent with the above cited lifting/carrying restrictions. Dr. Fontana felt that the claimant would not be able to do perform repetitive fine manipulation; however, he did not rule out occasional fine manipulation. Dr. Fontana's opinions are consistent with those of Dr. Newman whose exam was unremarkable. Furthermore, Dr. Freeman found only mildly positive carpal tunnel and crepitus in the radioulnar joint. An x-ray showed some evidence of impingement of the distal ulna.
>
> The medical record as a whole just does not support a conclusion that the claimant is not capable of doing any fine manipulation. The claimant testified that she does the dishes and laundry with some help, does all the cooking, gets her daughters ready for school and goes on some field trips and meetings. The claimant alleges numerous ailments and disabilities; however, the totality of the medical record does not support a conclusion that the claimant would be precluded from all work activity.

(Tr. 17, 20).

Social Security Ruling 96-9p: *Titles II and XVI: Determining Capability to Do Other Work – Implications of a Residual Functional Capacity for Less Than a Full Range of Sedentary Work* ("SSR 96-9p") sets forth the nonexertional limitations and restrictions that impede an individual's ability to perform a full range of sedentary work. Included in that list is a *significant* manipulative limitation on an individual's ability to handle and work with small objects with both hands. SSR 96-9p further states that an adjudicator may use a VE when the extent of erosion of the unskilled sedentary occupational base is unclear.

In this case, the ALJ acknowledged that Plaintiff is limited with respect to fine manipulation. While Plaintiff contends that she is unable to engage in any fine manipulation, a careful review of Dr. Fontana's report reflects that the notation regarding no fine manipulation is listed under the heading of repetitive actions, and in his written evaluation, Dr. Fontana expressly noted that "the patient would have difficulty with constant, repetitive activities." (Tr. 198). Thus, the ALJ did not err in concluding that while Plaintiff cannot engage in repetitive fine manipulation, she can engage in occasional fine manipulation. This is particularly true given Plaintiff's testimony that she is able to get her daughters ready for school, is able to cook, and is able to wash dishes and do laundry with assistance from her daughters.

Having determined that Plaintiff is restricted from repetitive fine manipulation, but can engage in occasional fine manipulation and reaching, the ALJ consulted a VE to determine if there are sedentary jobs that Plaintiff can perform in the national economy with these limitations. The VE testified that a ban on fine manipulation would preclude Plaintiff from all work; whereas, a restriction on repetitive fine manipulation, which allowed for occasional fine manipulation, would not preclude all jobs. The VE then identified jobs that Plaintiff could perform with the occasional reaching and manipulation restrictions. (Tr. 78-80). Accordingly, the ALJ properly relied on the VE's testimony to conclude that Plaintiff is not disabled, and his decision is supported by substantial evidence. See Orestano v. Comm. of Soc. Sec. Admin, 252 Fed. Appx. 962, 963, 2007 U.S. App. LEXIS 25677, at *2-3 (11th Cir. Oct. 31, 2007) (holding that where the ALJ found the claimant capable of performing a significant, but not full, range of sedentary work, and used a VE to determine whether there were a significant number of jobs in the national economy that Plaintiff could perform, he applied the correct legal standards and did not err).

2. **Whether the ALJ erred in failing to perform a function by function analysis of Plaintiff's limitations in assessing her RFC.**

Plaintiff argues that the ALJ erred in failing to make a specific finding regarding Plaintiff's ability to sit, stand, walk,

14

push or pull, and as a result, did not properly consider all of her work-related functions as required by 20 CFR § 404.1545(b) and Social Security Ruling 96-8p: *Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims.* ("SSR 96-8p").

Defendant counters that the ALJ performed the function by function analysis required by SSR 96-8p by considering and noting all the relevant evidence bearing on Plaintiff's ability to do work-related activities. The Commissioner further contends that the ALJ's residual functional capacity assessment to perform sedentary work implies the degree to which Plaintiff is able to sit, stand, walk, lift and carry.

"The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of an individual's ability to do work-related activities." SSR 96-8p. In Freeman v. Barnhart, 220 Fed. Appx. 957, 959-60 (11th Cir. 2007)(unpublished), the Eleventh Circuit held that an ALJ's failure to "more specific[ally] and explicit[ly]" set forth his findings with respect to a claimant's "functional limitations and work-related abilities on a function-by-function basis" is excusable where it is apparent the ALJ did "consider all of the evidence."; See also Chavez v. Astrue, 276 Fed. Appx. 627, 627-28 (9th Cir. 2008) ("Chavez claims that the ALJ committed legal error by determining his mental residual functional capacity without performing a function-by-function assessment as required by Social Security Ruling 96-8p, 1996 SSR

LEXIS 5. This claim fails because the ALJ considered and noted 'all of the relevant evidence' bearing on Chavez's 'ability to do work-related activities,' as required by the function-by-function analysis.") (internal citations omitted).

In this case, the ALJ concluded that Plaintiff has the severe impairment of carpal tunnel syndrome. He then set forth Plaintiff's residual functional capacity as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CRF 404.1567(a) and 416.967(a) involving only occasional reaching and occasional fine manipulation but no repetitive fine manipulation.

(Tr. 17). The ALJ summarized the evidence supporting such finding, including Dr. Fontanta's assessment, and Plaintiff's testimony regarding how long she is able to sit, stand, lift and carry, and her testimony that she does dishes and laundry with some help, does all the cooking and gets her daughters ready for school. (Tr. 17-18, 20).

Based upon a review of the record, the undersigned finds that substantial evidence supports the ALJ's finding that Plaintiff retains the RFC for sedentary work, with occasional reaching and occasional fine manipulation, but no repetitive fine manipulation. In reaching the RFC conclusion, the ALJ properly and clearly considered the record evidence regarding Plaintiff's functional capabilities, including Plaintiff's own assertions and the medical

records, and so complied with SSR 96-8p.  The fact that the ALJ did not expressly address each functional ability, such as the ability to sit, stand, walk, push or pull, or other functional capabilities is of no moment where the record clearly demonstrates that the ALJ considered all of the evidence, and further establishes that Plaintiff has the RFC set forth by the ALJ.

## V. Conclusion

For the reasons set forth, and upon careful consideration of the administrative record and the memoranda of the parties, it is **ORDERED** that the decision of the Commissioner of Social Security, denying Plaintiff's claim for disability insurance benefits and supplemental security income, be **AFFIRMED.**

**DONE** this **21st** day of **April, 2010.**

                                                **/s/ SONJA F. BIVINS**
                                            **UNITED STATES MAGISTRATE JUDGE**